UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK B.,

            Plaintiff,

     v.                                           **DECISION AND ORDER**

                                                                   19-CV-547S

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

        1.        Plaintiff Mark B.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for supplemental security income and disability insurance benefits under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed his applications with the Social Security Administration on March 21, 2012, for his Title II application, and March 29, 2012, for his Title XVI application. Plaintiff initially alleged disability beginning on March 1, 2009, and amended on August 8, 2008, and later to October 13, 2010, due to arthritis, migraine headaches, depression, and intellectual disability. Plaintiff's applications were denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On June 13, 2013, with sessions continuing on various dates, ALJ Marilyn Zahn held a hearing at which Plaintiff—represented by counsel—Vocational Experts

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

Yaakov Taitz, Carol McManus (present but never testified), and Timothy Janikowski, and Impartial Medical Expert Dr. Jerry Cottone, Ph.D., appeared and testified.  (R.[2] at 1363-90, 1260-1321, 1178-1220, 18, 1224.)  At the commencement of the first hearing, Plaintiff was 51 years old, had a high school education and a limited education due to being found to read at a 3.5 grade level (R. at 36, 1248).  Plaintiff had past relevant work as cleaner housekeeping and school bus monitor (both light exertion work).

4. The ALJ considered the case *de novo* and, on September 15, 2014, issued a written decision denying Plaintiff's applications for benefits (R. at 18, 1414).

5. After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he sought judicial review, [Mark B.] v. Berryhill, Case No. 16CV540.

6. The present case follows the remand ordered by then-Chief Judge Geraci in [Mark B.], No. 16CV540, Docket No. 18 (Jan. 12, 2018) (R. at 1446).  There, Judge Geraci remanded, on an expedited basis (R. at 1454), to have the ALJ give controlling weight to the opinion of Plaintiff's treating psychiatrist, Dr. Herman Szymanski (R. at 1451-52).  On remand, the ALJ also was to reconsider the opinion of consultative examiner, Dr. Kevin Duffy, Psy. D. (R. at 1452-54).

7. The Appeals Council remanded to the same ALJ to hold another hearing, take further action to complete the administrative record, and issue a new decision on Plaintiff's disability before March 25, 2013 (R. at 1455-57).

8. The ALJ held the second hearing on November 30, 2018, at which Plaintiff (represented by counsel) testified (R. at 1225, 1391-1409).  The ALJ corrected the clerical error as to when Plaintiff became disabled to March 24, 2013 (R. at 1225-26).

---

[2] Citations to the underlying administrative record are designated as "R."

2

9. The ALJ considered the case *de novo* and, on January 9, 2019, issued a written decision again denying Plaintiff's applications for benefits (R. at 1224), renewing findings made in the initial ALJ decision. After this decision, Plaintiff filed the current action, challenging the Commissioner's final decision.[3] (Docket No. 1.)

10. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 16.) Plaintiff filed a response on February 20, 2020 (Docket No. 17), noting that no further reply was necessary (id.). This Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

11. At issue here is whether Plaintiff was disabled during the closed period of October 13, 2010 (Plaintiff's last amended onset date (R. at 1223)), through March 23, 2013 (the day before the ALJ found Plaintiff was disabled due to his advanced age under the Medical-Vocational Guideline tables (R. at 1226)).

12. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971). Where

---

[3] The ALJ's January 9, 2019, decision became the Commissioner's final decision on this matter following remand.

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

13. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

14. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

15. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not,

> the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

16. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

17. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. On remand at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended onset date of October 13, 2010, and had not during

5

the closed period to March 23, 2013. (R. at 1228.) At step two, the ALJ found that Plaintiff had the following severe impairment: arthritis, migraine headaches, depression, and intellectual disability. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

18. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, that he was able to lift and carry frequently up to 20 pounds and lift and carry continuously up to 10 pounds. Plaintiff was able to sit for 30 minutes at a time, and up to three hours in an eight-hour day. Plaintiff was able to stand for 30 minutes at a time, and up to three hours in an eight-hour day. Plaintiff was able to walk for 30 minutes at a time, and up to two hours in an eight-hour day. He could frequently climb ladders and scaffolds. He could tolerate frequent exposure to extreme cold and heat. He was able to perform simple, entry-level work with occasional contact with the public and no high-pressure demands regarding time. (R. at 1233.)

19. This is the same residual functional capacity found originally by this ALJ in 2014 (R. at 23; see R. at 1247). The ALJ made this finding by relying upon the opinion of impartial medical expert Dr. Cottone (R. at 1246), who evaluated Plaintiff's IQ scores (R. at 1230, 1232, 1233, 1237).

20. At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (R. at 1248.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform. Upon the opinion of the Vocational Expert looking at a hypothetical claimant similar to Plaintiff in age, education, work experience and skills, and residual functional capacity, that hypothetical

claimant could perform such occupations as bench assembler, inspector, or assembler, electrical accessories, all light exertion occupations. (R. at 1249.) Accordingly, the ALJ found that Plaintiff was not disabled during the closed period of October 13, 2010, through March 23, 2013. (R. at 1250.)

21. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ ignored the direction of the remand and did not give appropriate weight to the psychological opinion of Dr. Duffy or the medical and psychiatric opinions of treating medical personnel (Docket No. 10, Pl. Memo. at 15-16, 17-20, 20-36) and lacked substantial evidence to support the physical residual functional capacity findings (id. at 36-38). He also faults the ALJ for not properly evaluating his credibility (id. at 38). He seeks as relief either remand for calculation of benefits or assignment of a different ALJ for further proceeding (id.). As elaborated below, this Court agrees with Plaintiff that the ALJ committed errors that require remand.

22. Judge Geraci remanded the initial ALJ decision for proper weighing of the opinion of treating psychiatrist Dr. Szymanski (R. at 1451-52) and reconsideration of Dr. Duffy's opinion (R. at 1452-54). The Judge noted how the ALJ considered the other medical opinions in the record but declined to consider the propriety of the ALJ's action, reminding the ALJ on remand to apply regulatory factors in assessing these opinions (R. at 1453, original opinion at 8 n.6).

23. Dr. Szymanski examined Plaintiff on September 11, 2013 (after the end of the closed period), for a period of hallucinations Plaintiff suffered. The doctor reviewed notes from his primary care treating source and found that plaintiff "clearly describe[d] the initiation of Sertaline 50mg a day in March of 2013 and its continuance up to their last

note 8-5-13," (R. at 795-96, 640; Docket No. 10, Pl. Memo. at 7-8). Plaintiff was prescribed hydroxyzine for panic attacks (R. at 796).

24. During the closed period (October 13, 2010, to March 23, 2013) and from the records reviewed by Dr. Szymanski (R. 795), on October 13 to December 20, 2010, Plaintiff was treated at Lake Shore Behavioral Health for adjustment disorder with depressed mood (R. at 439-46, 238; Docket No. 10, Pl. Memo. at 3). On September 12, 2012, Plaintiff suffered anxiety attacks (R. at 502-03, 537-39; Docket No. 10, Pl. Memo. at 5). Following his mother's death on October 27, 2012, Plaintiff sought treatment for depression on November 5, 2012 (R. at 510, 1240, 596; Docket No. 10, Pl. Memo. at 5). On December 18, 2012, Plaintiff was hospitalized for anxiety and, on December 19, Dr. Sheikh treated him for daily anxiety (R. at 675, 689-701, 564-66, 1241; Docket No. 10, Pl. Memo. at 6). On February 18, 2013, Plaintiff complained of increased depression (R. at 596; Docket No. 10, Pl. Memo. at 7). On March 6 and 8, 2013, Plaintiff sought treatment at Lake Shore Behavioral Health for increased anxiety and anxiety attacks since his mother's death (R. at 595-602, 789-94, 1241; Docket No. 10, Pl. Memo. at 7). On March 22, 2013, Plaintiff was prescribed Sertraline (R. at 640; Docket No. 10, Pl. Memo. at 7).

25. Following review of the above medical record, Dr. Szymanski diagnosed Plaintiff with panic disorder without agoraphobia; alcohol dependence in full sustain remission; nicotine dependence; GERD; degenerative joint disease of the spine and right hip; migraine headaches; and essential hypertension (R. at 798; Docket No. 10, Pl. Memo. at 8).

26. On November 6, 2013, Dr. Szymanski later opined that Plaintiff "remained impaired in terms of his ability to understand simple instructions, relate well to others on a consistent basis, carry out simple instructions and to concentrate and persist in a task" (R. at 755, 800; Docket No. 10, Pl. Memo. at 10).

27. Plaintiff contends, first, that the ALJ stated that she restricted her reconsideration only to reevaluate the opinion of Dr. Duffy, despite Plaintiff's argument during the last hearing about the scope of the remand from Judge Geraci (Docket No. 10, Pl. Memo. at 19; R. at 1394-95, 1395-96). He now argues that "this Court explicitly directed the ALJ to properly apply the treating physician rule to Dr. Szymanski's opinion on remand" (Docket No. 10, Pl. Memo. at 19-20 (emphasis in original)).

28. Defendant argues that since Dr. Szymanski did not see Plaintiff until after the closed period, the doctor lacked an ongoing physician treatment relationship thus his opinion could not be given controlling weight (Docket No. 16, Def. Memo. at 23). Defendant denies harmful, reversible error because Dr. Szymanski found Plaintiff was disabled after the closed period (id.).

29. The ALJ in her second Decision discussed Dr. Szymanski's opinion, finding that the doctor did not examine Plaintiff during the closed period at issue (R. at 1247; see Docket No. 16, Def. Memo. at 23), raising the similar objection to Registered Nurse Barone's findings (R. at 1247). The ALJ did give some weight to Dr. Szymanski's opinion as Plaintiff's psychiatrist (R. at 1246). The ALJ discounted Dr. Szymanski's finding of additional symptoms because they were seen after the closed period (R. at 1247) as the apparent justification for giving that opinion diminished weight.

30. Plaintiff's claims predate changes to the treating opinion regulations. The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 (2017), such as this one, e.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claims filed in December 2013). The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.).

31. As observed by Judge Geraci in his initial decision,

> "unless a treating source's opinion is given controlling weight, the ALJ must consider the following factors when she weighs a medical opinion: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether the opinion was rendered by a specialist in his or her area of expertise, and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6), 416.927(c)(1)-(6)"

(R. at 1450; see Docket No. 10, Pl. Memo. at 22, citing Halloran v. Barnhart, 362 F.3d 29, 32 (2d Cir. 2004); Docket No. 16, Def. Memo. at 23).

10

32.     The timing of Dr. Szymanski's treatment relative to the closed period is relevant as one factor.  The ALJ, however, needed to consider other factors in weighing that doctor's opinion.

33.     Dr. Szymanski did review medical records from March 2013 pursuant to the referral from Plaintiff's primary care facility, to reach his findings of Plaintiff's continued anxiety and anxiety attacks after his mother passed in October 2012.

34.     Although the ALJ expressly reevaluated Dr. Duffy's opinion almost to the exclusion of other opinions (R. at 1246-47), the ALJ in effect also reevaluated Dr. Szymanski's opinion, resting upon its timing relative to the closed period (R. at 1247) without considering the doctor's record review from treatment during the closed period.

35.     The ALJ here erred in not considering the other regulatory factors in weighing Dr. Szymanski's opinion.  Dr. Szymanski examined Plaintiff and (after the closed period) had a longitudinal treatment history.  The doctor's file review covered the prior period (during the closed period).  Dr. Szymanski is a psychiatrist and rendered opinions within his area of expertise.  The ALJ discounted the later symptoms noted by the doctor as arising after the closing period; the ALJ did not consider whether these new symptoms were consistent with Plaintiff's symptoms during the closed period.  Remand thus is warranted to (once again) review Dr. Szymanski's opinions.

36.     Thus, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) on this ground is granted.

37.     Next, consultative examiner Dr. Duffy found that Plaintiff can follow and understand simple instructions, he can perform simple tasks independently, but has difficulty maintaining attention and concentration (R. at 456).  Although his cognitive

functioning is believed to be somewhat deficient, Dr. Duffy opined that Plaintiff could learn new tasks, but may need additional repetition to learn complex tasks (R. at 456, 1247).

38.     The ALJ claimed she reevaluated Dr. Duffy's opinion and found that it was "not inconsistent with the residual functional capacity findings in the prior decision and adopted herein" (R. at 1247), only affording this opinion some weight because of Dr. Duffy's single examination (R. at 1246).

39.     Plaintiff counters that the ALJ also needed to apply regulatory factors to Dr. Duffy's opinion, especially since his record contains other references to his limitations in maintaining attention and concentration and in learning new tasks (Docket No. 10, Pl. Memo. at 17-18).  Plaintiff rests upon Judge Geraci's remand decision (id. at 18; R. at 1453).

40.     Defendant responds that, despite her tone, the ALJ did comply with the remand and reconsidered Dr. Duffy's evaluation and that limitations Dr. Duffy noted for additional repetition only applied to learning complex tasks (Docket No. 16, Def. Memo. at 19).  Defendant also points out other medical opinions in the record supported Dr. Duffy's opinion (id. at 20), such as from Dr. Cottone (R. at 124, 1339), distinguishing post-closing period records from nurse Amelia Barone (Docket No. 16, Def. Memo. at 20).

41.     This Court agrees with Defendant that the ALJ re-examined Dr. Duffy's opinion consistent with the mandate of the remand, noting limitations based upon the complexity of the tasks Plaintiff was to perform.  On this ground, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is denied.  Given the remand ordered above, however, the ALJ is free to revisit Dr. Duffy's opinion.

42. Plaintiff next argues that the ALJ failed to give appropriate weight to the opinions of treating sources and other evaluators (Docket No. 10, Pl. Memo. at 20-22, 31, 32).

43. For example, Dr. Gregory Fabiano, Ph.D. (R. at 1246, 1247, 705-12; Docket No. 10, Pl. Memo. at 9-10, 32), conducted intelligence testing and found that Plaintiff's intelligence evaluation reflected reading/decoding at 3.5 grade equivalent (R. at 706). Dr. Fabiano found that Plaintiff's verbal comprehensive IQ score 68, perceptual reasoning IQ score 60, working memory IQ score 63, processing speed IQ 68, and his full-scale IQ score 59 (R. at 706-07).

44. ALJ, while noting that Dr. Fabiano had examined Plaintiff, rested upon Dr. Cottone's "persuasive[]" testimony that Dr. Fabiano's testing and conclusions were not consistent with Plaintiff's ability to function (R. at 1247). Dr. Cottone opined that Plaintiff's IQ scores were not an accurate reflection of Plaintiff's intellectual functioning, that a score of 59 was too low given Plaintiff's level of functioning (R. at 1230). At the initial hearing, Dr. Cottone testified Plaintiff's IQ scores were likely in the upper 60s or 70s (R. at 1231).

45. Plaintiff, however, faults the ALJ for only evaluating Dr. Fabiano's IQ scores and not narrative portion of his opinion (Docket No. 10, Pl. Memo. at 32).

46. As for registered nurse Amelia Barone she noted on June 23, 2014, that Plaintiff could sit for 15 minutes at one time and stand for 45 minutes at one time while able to walk for four city blocks, Plaintiff could sit, stand, and walk for about two hours of an eight-hour workday, and he could lift 20 pounds frequently and rarely 50 pounds (R. at 1243-44, 1063-64, 1066). As discussed above for Dr. Szymanski, the ALJ also found

Barone treated Plaintiff after the closed period (R. at 1247). The ALJ also dismissed her opinion because she was not a doctor and her statements conflicted with Dr. Cottone's (R. at 1246). Barone's findings echoed those of Dr. Szymanski (R. at 1246).

47. Plaintiff argues that the ALJ erred in failing to apply regulatory factors in evaluating Barone's opinion (Docket No. 10, Pl. Memo. at 31-32). Defendant responds that at the time of this case, only accepted medical sources could provide evidence proving the presence of a disabling impairment and nurses were not recognized as acceptable medical sources (Docket No. 16, Def. Memo. at 24).

48. Given the remand to consider once again Dr. Szymanski's opinion, this Court need not consider whether the ALJ's reconsideration of Dr. Fabiano and Ms. Barone's opinions was proper but on remand these opinions are open for further consideration (R. at 1453 n.6).

49. Therefore, Plaintiff's motion for judgment on the grounds of the evaluation of his other treating sources is granted.

50. If remanded, Plaintiff proposes either remand for calculation of benefits or for further proceedings before a different ALJ (Docket No. 10, Pl. Memo. at 38; Docket No. 17, Pl. Reply Memo. at 1).

51. Upon remand, Defendant concludes that remand for calculation of damages is not warranted especially since Plaintiff has been receiving disability benefits since March 2013 (Docket No. 16, Def. Memo. at 28-29). Defendant makes no comment about which ALJ should hear the remand.

52. The form of relief here raises two issues. First, whether this case (on its second consideration by the same ALJ) should be remanded once again for further

proceedings or remanded merely to calculate benefits for the closed period (October 2010 to March 2013). Second, if remanded for further proceedings and reconsideration of the record, whether a second ALJ should be assigned to this matter.

53. Given that treating sources opinions again were not given sufficient scrutiny, the record is not established to remand for calculation of benefits only despite the limited period of thirty months for benefits. The otherwise relatively simple calculation of benefits for a closed period cannot yet occur until the finding of disability is made.

54. As for which ALJ should hear the case on remand, the Commissioner enjoys discretion in the assignment of ALJs. "'The selection of a new ALJ on remand has been considered to be within the discretion of the Commissioner of the Social Security Administration'; however, 'when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate." Sutherland v. Barnhart, 322 F.Supp.2d 282, 292 (E.D.N.Y. 2004)," Arshad v. Astrue, No. 07 Civ. 6336, 2009 WL 996055, at *6 (S.D.N.Y. Apr. 6, 2009) (Fox, Mag. J.) (Report & Recommendation).

55. "'Factors for consideration in this determination include: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; [and] (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party,'" Arshad, supra, 2009 WL 996055, at *6 (quoting Sutherland, supra, 322 F. Supp.2d at 292).

56. Judge David Larimer noted other factors to consider when the Court orders the Commissioner to reassign a remanded case, such as (1) any record of hostility between the ALJ and the plaintiff's attorney; (2) failure by the ALJ repeatedly to apply the correct legal standard in the case; and (3) is any suggestion in the record that the ALJ "may have formed opinions about the claimant that could possibly prevent an objective review of the evidence and a fair rehearing," Dioguardi v. Comm'r, 445 F. Supp.2d 288, 300 (W.D.N.Y. 2006); Arshad, supra, 2009 WL 996055, at *6.

57. Applying these factors, while it appears that the ALJ gave short shrift to the remand mandate from Judge Geraci, this alone does not raise serious concerns about fundamental fairness to call for remand to a second ALJ.

58. Judge Geraci directed the ALJ to consider Dr. Duffy's opinion and that from other medical sources but the ALJ focused almost exclusively on the first part of the mandate and less on the second part. This error is not a repeated failure to apply the correct legal standard, but cf. Dioguardi, supra, 445 F. Supp.2d at 300.

59. Plaintiff has not shown that the current ALJ manifested bias or hostility against him or any indication that the ALJ was not impartial in weighing evidence.

60. Therefore, this matter again is remanded but the Commissioner retains the discretion to return this case to the same ALJ who already has rejected Plaintiff's claim twice. The Commissioner, however, may consider the prudence of reassigning this case upon this second remand.

61. Thus, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is granted, while Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is DENIED.

FURTHER, the Commissioner continues to enjoy the discretion in assigning this matter on remand.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:     August 12, 2021
           Buffalo, New York

                                              <u>s/William M. Skretny</u>
                                              WILLIAM M. SKRETNY
                                              United States District Judge